Argued February 26; reversed March 19, 1935

# BURDETT ET AL. *v.* KOSER

(42 P. (2d) 450)

W. T. *Vinton* and *Eugene Marsh,* both of Mc-
Minnville (Lawrence B. Osterman, of McMinnville, on
the brief), for appellants.

*Oscar Hayter,* of Dallas, for respondent.

KELLY, J. On the 18th day of May, 1931, plaintiffs, as parties of the first part, and defendant as party of the second part, entered into a written contract for the purchase by defendant from plaintiffs of approximately 160 acres of real property in Yamhill county, Oregon.

We quote from said contract the portion thereof which we deem material to this discussion:

"And the party of the second part agrees to purchase the above described premises, and pay therefor the said sum of $18,850.00 in the following manner, to-wit: $500.00 cash, the receipt of which sum is hereby acknowledged; $500.00 on or before sixty days from this date; $5,850.00 on October 1st, 1931, at the time of the delivery of the deed, the balance, to-wit, $12,-000.00 represents a mortgage on the above described premises to the Metropolitan Life Insurance Company, which mortgage draws interest at the rate of .0583% said interest being payable annually on the 1st day of November of each year, which mortgage in the said sum of $12,000.00 and interest thereon from October 1st, 1931, the party of the second part assumes and agrees to pay.

"It is further understood and agreed by the parties hereto that parties of the first part will deliver on or before the 20th day of September, 1931, an abstract to the above described premises to party of the second part for examination, which abstract must show a fee simple title in the parties of the first part free and clear from all liens and encumbrances of whatsoever nature, save and excepting the said mortgage to the Metropolitan Life Insurance Company.

"It is further understood and agreed between the parties hereto that should there appear any error in the title to said premises, then parties of the first part will have 90 days within which to correct the same.

"It is further understood and agreed that parties of the first part will have all the crops now growing on said premises, and are to have if necessary until the 1st day of November, 1931, to remove said crop from said premises. It is agreed, however, that party

of the second part is to have the possession of said premises on the 1st day of October, 1931, save and excepting the right of ingress and egress to remove the crops above mentioned.

"It is further understood and agreed that should parties of the first part fail to furnish an abstract to said premises showing a marketable title in said premises, clear and free of all encumbrances to said party of the second part, save and except said mortgage to the Metropolitan Life Insurance Company, then parties of the first part must repay to party of the second part all moneys paid down on said contract, together with interest thereon at the rate of 6 per cent per annum from the date of payment of said sums; and should party of the second part in event said abstract shows a marketable title, fail to go forward with said agreement and complete the same under the terms of this agreement, then the moneys paid to parties of the first part under this agreement shall be deemed forfeited and shall become the parties of the first part, and said forfeiture shall not be deemed a satisfaction of this agreement, by reason of the failure of either party, and either party may upon default of the other enforce such penalties as the laws of Oregon specify."

Prior to October 1, 1931, defendant paid to plaintiffs sums of money amounting in the aggregate to $2,600, and on October 1, 1931, entered into possession of said real property.

Defendant also paid to the Metropolitan Life Insurance Company interest upon said mortgage for one year amounting approximately to $700.

On October 2, 1933, plaintiffs tendered defendant a deed to said real property and demanded the payment of the sum of $4,250 with interest thereon at 6 per centum per annum from October 1, 1931.

Defendant failed to make such payment and advised plaintiffs that he was unable to make it.

On the 3d day of October, 1933, plaintiffs instituted this action and secured the issuance of a writ of attach-

ment pursuant to which a levy was made upon defendant's personal property.

On the 17th day of November, 1933, plaintiffs notified defendant that they had leased said real property to William Gray and requested and authorized defendant to surrender possession thereof to him as plaintiff's tenant.

On December 20, 1933, defendant vacated said property and surrendered the possession thereof to the said Gray, or to one Wellsandt to whom plaintiffs at the instance of said Gray executed a lease to said premises.

Under the foregoing facts, plaintiffs were not entitled to recover the purchase price for the reason that the payment thereof was dependent upon and concurrent with the conveyance of the premises by deed free of all encumbrances except said mortgage and the lease constituted an encumbrance.

■ We think, however, that the institution of the action, as well as the demand for payment, constituted notice that plaintiffs were insisting upon a compliance with the terms of the contract notwithstanding their forbearance for two years.

■ With reference to defendant's counter-claim, as we read the record, defendant made no payment upon the contract during the last two years, from October 1, 1931, to December 20, 1933, that he was in possession. For some time prior to his surrender of possession, defendant was in default and desired to be released from the obligations of his contract, and defendant made that desire known to plaintiffs. In his conversation with plaintiffs upon the subject defendant made no demand for a return of any part of the payments which he had made two years before, nor was there anything said concerning a mutual rescission. His purpose was to be relieved from the contract. In this state of af-

fairs, we are unable to construe plaintiffs' demand for possession of the premises and their act in leasing the same as anything more than an assent to defendant's request to be released from further obligation under his contract to purchase. This is not mutual rescission.

No contention is made that plaintiffs failed to furnish the abstract in accordance with the contract, and it is a fair inference that it was either furnished or that defendant waived the same.

This being so, the demand for and the taking of possession of the premises by plaintiffs could be construed as a declaration of forfeiture under the terms of the contract.

As well said by Mr. Justice ROSSMAN in a recent case:

"But when the vendee has breached the covenants of his contract and the latter contains a provision entitling the vendor to declare a forfeiture on account of such breach, the forfeiture is not a rescission of the contract. A rescission terminates the contract by a method not authorized by the agreement itself. It extinguishes the contract despite its provisions which contemplate a totally different result. A forfeiture declared, pursuant to the terms of the contract, executes the agreement as effectually as performance itself. It is an assertion of a right granted by the contract." *Holland v. Bradley*, 140 Or. 258, 263 (12 P. (2d) 1100).

In either view, defendant is not entitled to recover upon the counter-claim which is based upon an alleged mutual rescission.

The judgment of the circuit court is reversed and the cause remanded with directions that a judgment of dismissal be entered.

CAMPBELL, C. J., and BELT and ROSSMAN, JJ., concur.